All right. Good morning. Good morning, Your Honors. May it please the Court, Todd Boley appearing for the appellants. The appellants presented evidence to the trial court that would support claims under the ADA and Section 504, the Rehabilitation Act, on two separate theories. The trial court did not address one of those theories, and that is the claim that Defendant Dena Holders completely failed to provide any of the accommodations necessary for these children to overcome their disability, and that as a result she would deprive them of meaningful access to education. Counsel, may I ask you, under the ADA generally, there is a request for an accommodation, a specific request for an accommodation, and then a decision whether or not to provide that accommodation. In this case, what was the requested accommodation? Well, going back and, you know, all of these kids had individual education plans. There was a recognition by the district that they were disabled and required specific accommodations that were individual to each of those children. Were those accommodations or were those education plans? Well, the, I think that if you go to, in addition to the specific education, specific IEPs, if you look at our brief, and I'm referring to pages 10 to 16 of the, of our opening brief, we describe the types of accommodations that are necessary for children with these disabilities. I guess what I'm having some difficulty with is how, how those requested accommodations were communicated to the district other than through the IEPs. I, you know, we don't have in the record, going back to the beginning of the, of these kids' involvements, but I mean, you would have to go back to all of them probably received, you know, the district would have been notified that these were kids who required special accommodations. And this would have been because they were provided services in preschool, which is something that non-disabled kids do not receive that kind of services at all from the district. And so I can't point you in the record where specifically here they were put on notice, but the IEPs themselves constitute an acknowledgment by the district that each of these kids do require special accommodations. So I'm just, I'm still just kind of trying to understand why this doesn't fall within the IDEA then as opposed to the ADA if you're relying upon the notification that was given of special education needs and then the development of an IEP. How do you get outside the rubric of the IDEA? Well, there's a number of reasons. First off, the evidence that there was an unhealthy environment, that there was verbal and physical abuse in the classroom is something that takes it outside of the IDEA. In other words, a hostile environment claim or a claim of verbal and physical abuse is something that could exist outside of a school and could involve adults. I agree that you have stated, asserted a claim under a hostile education environment, but how does that take you into the ADA? I guess that's what I was asking, because you started off with your ADA claim, and I'm wondering how you get from the IDEA to the ADA based on the facts in this case. Well, the, addressing the ADA, first off, we believe that the Court should recognize a hostile environment claim under the ADA and the Rehabilitation Act. That's number one. Number two, if the, and the evidence is very substantial that the district itself recognized that the teacher was creating an unhealthy environment for children, that it was intimidating and that it was inappropriate and the children were acting out of fear. And that obviously would interfere with the ability to access education. But you've got a very bad teacher here. I mean, no one is praising her for her abilities. The question whether you really measure up to the ADA, but you need to prove intentional discrimination. She was bad, but what do you prove intentional discrimination? She's a terrible teacher. But is there some evidence she went in and uttered these terrible things because she wanted to discriminate, or was she just off a rocker? Well, the Duval v. Kitsap case makes clear that this Court has held that it's not necessary to show an anti-discrimination, you know, an animus, having a subjective, you know, animus towards disability. The standard is deliberate indifference. And so it was, and the defendants don't argue that. I thought it was intentional discrimination. But in terms of intentional discrimination, that is, in the Duval case, defined as deliberate indifference. Well, you lost me. It's either intentional or not. If it's deliberate indifference, where's the intent issue? Well, there is intent, Your Honor. It's an, it's a, the intent involves the understanding by the defendant that there's a need for an accommodation or that the actions they're taking will discriminate against the person, and then intentionally, you know, going forward in doing that act. But the standard, so the intent is in the intentionally doing the act that you understand will deprive somebody of their rights under the ADA. And that's very clearly defined in the Duval case. So she yells at him and cusses at him. That's sufficient to show intent under the act? Yes, Your Honor. That alone? Yes, Your Honor. Can I ask you, how do we know that the hostile educational environment was on the basis of the student's disabilities? Well, first off, Your Honor, the, most obviously, they were assigned to this classroom because of their disability. And there's testimony that. Okay, but let's assume that this teacher had taught both disabled and non-disabled students and acted in the same horrible way in both classrooms. I assume on that set of facts you would say that actually you don't have a claim under the ADA and the Rehabilitation Act, right? Well, if you're just talking about those facts, but we have more here in that. Hang on. I'm just trying to say that if a teacher is a bad teacher, right, because they just are verbally abusive, maybe physically abusive to their kids, but it's not because of the fact that the kids are disabled. They treat all kids, disabled, non-disabled, the same way. Correct. You would agree that you have no claim. Correct. If you had, you know, I forget the word, but, yes, if they were, if they treated disabled and non-disabled students the same. So what do we have here that shows that, in fact, her mistreatment of these kids was on the basis of their disability? Well, first off, they were assigned to this classroom because of their disability, and the testimony is that there was no, that these conditions did not exist in any other classroom and were not faced by non-disabled students in the district. Of this teacher? Yes. This teacher taught non-disabled kids? No, no, no. What I'm saying is that her classroom was, consisted only of disabled kids. I know, but you have to show that her treatment of these kids in creating the hostile educational environment was on the basis of their being disabled, right? Right. And so I'm saying, if you don't have the kind of control group evidence that I'm positing, what do you have that shows, in fact, that this is, she was only treating these kids this way because they were disabled? Well, there is also testimony that her aggressive behavior was in reaction to their children's disabilities, and that's discussed in her opening brief at page 8 and 45 and 46. Let me push back and just tell me if I'm wrong. I got the sense that she, her behavior was caused by the kids not being cooperative, not following directions and the like. And so if she would have responded the same way to them, then, again, I don't see how you have a claim under these statutes. But there's a difference in that, you know, and that was pointed out by the school psychologist, and the court below incorrectly said that this was hearsay. If you look at the record at page 128 to 129, it's clear it's based on her own observations, and that is that the kids were not responding because of processing issues that they had because of their disabilities, and that was what she was responding to. The same thing was reported at page 1246 in the declaration of psychiatrist Ponton. So, you know, there is evidence. I don't see how does that meet the concern that I have, though, because, again, the kinds of behaviors that the kids are exhibiting are not unique to kids with disabilities. Other kids could engage in the same kind. I mean, not exactly, but I'm just saying in terms of the response that it's provoking from the teacher. So it would be different, of course, if the teacher were engaged in verbally abusive conduct toward the kids that singled them out, you know, said something condescending or criticizing them because of their disability. That's easy, right? That's an easy case. But I'm saying here it seems to me the behavior that the teacher is engaging in is kind of generic in the sense that it could just as well have been applied against non-disabled students. So I'm at a loss to see how you've met the showing that you need to make here. Right. Well, all that I can do is refer to the arguments we've made in the brief, Your Honor, and I think that in addition to whether or not this is a freestanding hostile environment claim, certainly the conduct goes to the denial of meaningful access because the testimony is very strong that this unhealthy environment that the district itself recognizes had a detrimental effect on these kids' ability to learn. And those conditions didn't exist in the classrooms of non-disabled kids. And so there's sins of omission and sins of commission. Okay. I'm with you on that, but that's your first basis for this claim. Correct. That's the denial of access. Correct. Correct. So tell me how you get around Fry on that in terms of having to exhaust. Well, because first off, we are talking about verbal and physical abuse, which is the type of behavior which could occur outside of a classroom and involve adults. In addition, the claim arises under the Rehabilitation Act, and the claim is that all the children in the classroom were deprived of meaningful access because of their conduct. So this is not the type of case that would be raised in an individual due process hearing under the IDEA. But, I mean, just to use Justice Kagan's example, didn't she have the one about could it be brought against the library or something? I can't remember how she put it. But, no, what you're complaining about is access to the very thing that's covered by the IDEA. So I don't see how that gets you around Fry. Right. Again, I would point to the cases that we mentioned that distinguish between the Rehab Act and FAPE under the IDEA. Does that distinction still exist after Fry? I don't see the distinction. I thought Fry said it doesn't matter what statute you're bringing the claim under. Right. If the core of the claim goes to the access to a FAPE, that you're basically shunted into the IDEA's exhaustion regime. I would like to reserve some time for rebuttal. All right. Thank you, counsel. Wait. Could I ask a question on my time? Sure. Do you concede that you have to show causation? Yes, Your Honor. That you have to show solely by reason of? Yes, Your Honor. And that goes to focusing upon Holder, why she allegedly abused these kids? Yes, Your Honor. And that was my discussion with Justice Watford. Okay. Thank you, counsel. Thank you. Good morning, Your Honors. Good morning. Seth Gordon on behalf of the Brentwood Union School District and all of the individual appellees other than Dena Holder. I'll be arguing for nine minutes, and counsel for Ms. Holder would like six minutes to present argument on her behalf. I'd like to ---- Maybe before you launch into the legal technicalities of this case. Please put nine minutes on the clock. Okay. That way we won't have to worry about trying to save it. It very rarely happens. All right. Thank you, Your Honor. So can I just ask you, I don't know, kind of a common sense question? Nobody here would defend the conduct of this teacher, and I'm sure you're as horrified as anyone at the experience that these kids had to go through. But doesn't it seem odd to you that with conduct this egregious that, I mean, you're taking the position that basically these parents have no, they're not entitled to any relief, notwithstanding the fact that their kids undeniably suffered at the hands of this teacher. I just, something kind of gnaws at my gut at the position that you're defending here, right? And understandably so, Your Honor, and I think that the, well, first picking up on what you said earlier, by reason of, solely by reason of, those are the standards under the ADA in Section 504. But there's a more fundamental problem, and it goes to your concern. And it is what the evidence showed that this teacher actually did to these specific students. And what Chief Judge Hamilton held in this case is that these five particular students didn't present any evidence that they were ever abused. And I'd like to back up a second because I think that there's, and provide some context for this case, it's lost in appellant's opening brief, and I think it was very important to Judge Hamilton's decision. And that is the fact that it's undisputed that it was reported to the school district at the end of the 2010 school year that Holder was seen kicking a student. The district immediately investigated that incident, severely reprimanded Ms. Holder, and implemented a multitude of measures to ensure the safety of its students. And Holder was eventually criminally prosecuted and lost her job. But the main point about this is that the attorneys in this case filed suit on behalf of that student, and the district settled over those claims. The same attorneys then went and gathered up a group of another eight students that were formerly in Holder's class and again filed suit against the district. And the district again settled the lawsuit, thinking it would be the end of it. That brings us to this case. The same attorneys then went and gathered up a group of another six students, including the five minor appellants at issue here, and sued the school district based on the allegations from the previous two lawsuits. And Judge Hamilton said, wait a second, you can't prove intentional discrimination in the beginning of the case. They alleged excessive force under 1983. And even at that stage, she said you haven't alleged violation of a constitutional right based on abuse of other students. And then when you got to the summary judgment stage, she repeatedly asked plaintiffs to provide evidence that they were ever mistreated and they could not produce the evidence. Well, they were not, maybe with the exception of the one child who had, I think, like a mark on his arm or something, that they weren't the subject of direct physical abuse by the teacher. But I guess what I'm getting at is that we have the reports from the psychologists who I just don't see how you could defend the notion that somehow they didn't suffer as a result of being in this teacher's classroom, right? So there's egregious conduct on the teacher's part, documented harm to these kids, not, forget about the kids in the other case, to these kids. I can't remember how severe the decline was, but there's definitely a significant downward trajectory that nobody, or are you disputing that it was connected to this teacher's conduct? Absolutely, Your Honor. And I think the reason is, is because if you look at the expert declarations, which, by the way, we would contest the fact that they're, that they were deemed admissible. But if you look at those, they don't, I think it's Dr. Ponton, she didn't even interview any of these kids. And the important point to note is that the interview that was conducted of all these other children that were unidentified children that were interviewed is that they weren't in the same time period. These allegations don't come from the same time period, and that's what's also lost in Appellant's brief, and we tried to point it out in our brief. The time frame is very important. There was only one minor plaintiff in this case that was actually in Holder's class during the 2009-2000 school year during the Phelan incident. And he was one of the verbal students, and he testified during deposition, Holder didn't do anything, didn't do anything to me. So briefly, Your Honors, I'd like to move to Duvall unless the Court has any further questions on the facts of the case. I'd like to have you leave room for the State claim. Yes, certainly, Your Honor. And I know that counsel for Ms. Holder is going to address that exclusively, I think, but if you would also like me to address that, I will as well. No, I just want to know who I'm talking to. If you want to pass the ball to him, that would be fine. Thank you, Judge. So there's three points that I'd like to make about Duvall, because it's on the face of it, Judge Reinhart said Respondent Superior in Duvall, and this Court is tasked with determining what did Judge Reinhart mean when he said that. And I think the first point actually relates back to the evidence. And even assuming that the appellant's interpretation of Duvall is correct, if there is no evidence in this case that these children were ever mistreated, how can there be Respondent Superior liability? The second point is more of a legal point, and that is that you have to take Judge Reinhart's statement in the context of the entire decision. And so Duvall starts out with, by setting forth the deliberate indifference standard, you have to have the two-pronged standard of knowledge of a constitutional or intentional discrimination and the failure of the district to act on that discrimination. Before you get any further into this, can I ask you, do we need to grapple with this in order for you... Absolutely not. Let me just finish my question. Sorry, I'm sorry. I think you anticipated where I was going. In order for you to prevail, and the answer is absolutely not? Absolutely not. Okay. Maybe just quickly, why not? What are the... The main reason why not is because they haven't produced any evidence that this teacher ever did anything bad to these particular kids. And so there can be no respondee at superior liability if there's no evidence of abuse or intentional discrimination. But returning to the legal analysis, so Duvall first actually quotes Justice O'Connor from the city of Canton, Harris, in defining deliberate indifference, and there the court states deliberate indifference requires both some form of negligence, and it requires a showing of a deliberate choice on behalf of the administrators not to take action. And then finally, I think the most important point about Duvall, Your Honors, is that both in the statements preceding the respondee at superior language, and in the statements by Judge Wright, and in the statements by  And I think that's a very important point. the respondent at superior language, he is very careful to focus on the fact that the defendants in that case actually had the authority to grant the accommodations. So I guess in sum, what did Judge Reinhart mean when he said respondee at superior in Duvall? And it is what he was saying was that, yes, a school district can be liable under 504 based on the acts of its employees if those employees have the authority to ameliorate the situation. And that's all that Duvall, that's all that Judge Reinhart was saying in Duvall. I'm short on time. I would just ask the court, there's two major circuit cases that have been cited by both parties on this case. The appellants have asked the court to look at the Fifth Circuit's decision in Delano Pyle, and we have asked the court to look at the Eleventh Circuit's more recent decision in lease for Indian River. And I would simply state that lease is the better reasoning. If you look at both of those cases, the court, the Fifth Circuit in Delano Pyle made a very obvious error in interpreting the ADA by relying on Title I instead of Title II. It's outlined in the brief. I'm out of time, Your Honors, unless there's any other questions. I'll turn the time over to co-counsel. All right, thank you, counsel. Good morning, Your Honors, and may it please the court. I'm Eric Banks, and I represent Defendant Dina Holder in this matter. I have a very limited issue for Your Honors today. I'm dealing solely with the state claims that appellants have, at a late stage of the game, decided is going to excuse them from complying with the California Tort Claims Act. There are two main points I want to address that were raised in the appellant's reply brief. First one, focusing on the case Singleton v. Wolf that was cited regarding this issue of whether I can even argue the timing of the alleged abuse and whether it occurred pre-January 1, 2009. Second issue is whether plaintiff or appellants actually even alleged a claim under 340.1 for childhood sexual abuse in their, any of the complaints, particularly the operative complaint, the 30-minute complaint. Why don't you start with the second first? The district judge appeared to think that there has been no touching between these toes and MC, is that? MG, Your Honor. MG. And so, therefore, there's no claim. But wasn't the district court wrong there? Constructive touching is sufficient. That certainly was. Your Honor, I think you're referencing the cases cited by Plaintiff's counsel dealing with penal actions. And I would concede that there are cases where if a perpetrator is encouraging verbally or otherwise a child to touch themselves, that may give rise to liability. The point is here, as with respect to Ms. Holder, they don't even produce evidence of that. The only evidence about Ms. Holder being even in the room is given by MG's father, and he says that she's not in the circle. There's no evidence that she's in the circle or encouraging in any way. She explains to him how they're painting their toes different colors to see if they'll get different responses from his child as he bumps on the floor and attempts to get some type of sexual abuse. She knew what was going on and claimed that it was part of their scientific play. Clearly, those women weren't doing that. They were playing games with this kid. But isn't that sufficient to get by the difficulty the district court had that there be no constructive touching is sufficient? It's really not, Your Honor, because intent is a specific element of that penal code section that they're citing under CCP 340.1 that would allow them. Intent to do what? Intent of Ms. Holder to cause the child to have a sexual reaction. There's no evidence of that in the record. There's no evidence that she did not know that they're painting their toes, nails differently and trying to get a different reaction from the child. And that's the key, Your Honor. Is that true or not? Yes. There's no evidence that shows Ms. Holder intended for those other individuals in the classroom, the aides, to that those aides were then doing what they did with their toes in order to cause the play. There's evidence from the father that he talked to Ms. Holder and she explained how they're doing this in sort of a scientific. Isn't that sufficient evidence that she knew what was going on and that it was some sort of a game, but she had it developed into some scientific test? Even if she knew, even if that were in the record, that still. It isn't a record from the husband. That still doesn't establish that she has the specific intent to cause the boy to have a sexual gratification. There's some evidence. There's no evidence? There's no evidence on the issue of her intent. That's absolutely not. And I think what appellants would ask you to do is make an inference on that issue, and I don't think that's a fair inference to make. It certainly wouldn't be fair in the criminal court of law, which is exactly the type of penal statute they're citing. I don't think anyone would argue that you could go into a jury in a criminal court and suggest that a defendant or prosecutor has met the element of intent simply by saying, well, she knew they were painting their toenails and trying to get different sexual deviant conduct out of a child. See, that's the difference, Your Honor. Before you were talking about a different reaction. Now you're suggesting that the record indicates that she intended to – that they intended to cause a different sexual reaction. There is definitely no evidence in the record of that. No evidence there was nothing sexual going on? There's no evidence that Ms. Holder told Mr. G, I'll call him, the father, that I knew that they were trying to get a different sexual reaction out of her. Oh, no. She isn't going to admit all that. But it seems to me that there's a reasonable inference that if she knew this was being changing colors in order to get a different sexual reaction, that that's sufficient at least to get past the beginning of the case. I don't think it is, Your Honor. And here's – Why? Well, first of all, the claim against Ms. Garrett – I'm sorry, against Ms. Holder, the claims against Ms. Holder have to meet the standard in the California's CA v. William S. Hart case. That's the California Supreme Court case. And that case is dealing with issues where somebody else in a school has sexually abused a child. That's exactly what we're talking about here. Ms. Holder is not the one, right? That's right. So in order – under CA v. William S. Hart – But she's not the one directly doing it. Correct. And that's – and that was the case in CA. And in that case, the Court said you've got to be a supervisor or a school administrator. Here, we have no evidence of Ms. Holder being either, A, the aide supervisor – supervisor – their supervisor is the principal of the school – or, B, an administrator of the school. Ms. Holder is a teacher. She's not an administrator. So under that – the framework provided in the – by the California Supreme Court case, in these – in a real sexual abuse case – because I would submit to you this is not, and I think a plain reading of the complaint will illustrate that. And clearly Ms. – or Judge Hamilton felt the same way. But even if it were a sexual abuse case, Ms. Holder cannot be liable under any of these State statutes – or, I mean, these State claims unless she's the supervisor or an administrator. She is neither. There is no evidence that she's the supervisor of aides in her classroom. What – you mean these aides are sitting there and she has no – there are aides sitting there aiding her in her work and she has no control over them? Absolutely, Your Honor. A supervisor in the – in a school is a very defined position. She has no ability to hire and fire. She has no ability to do evaluations. All of those things are done by a school administrator, a principal in this case. Counsel, do you concede that this claim was timely under State law? No, absolutely not, Your Honor. I think that the evidence that we cited from the mother's testimony – that's in the record at 375 through 377 – unequivocally shows that this conduct that's being complained about, the only direct evidence, the only evidence that this even occurred comes from the father. And the father tells the mother, as evidenced in – as I just said in the record, that this happens before Christmas in 2008. If that's the case, then – and it is. There's no other evidence that you're going to find in the record other than an attempt to have the court infer that it continued without any evidence on that issue. If it happens before Christmas 2008, it is before January 1, 2009 cutoff, a tort claim is required. Is that raised in a district court? It was, Your Honor. I'm glad you asked that, because it was brought up in the reply brief. And I would direct Your Honor to the record at 242, 356, 375, 376. The issue wasn't directly raised by the district or Ms. Holder in their opening motion for summary judgment brief, because it wasn't an issue in the case. It wasn't alleged in the complaint. And so, of course, the defendants couldn't address it in their opening brief. It ends up getting briefed by the appellants themselves in their opposition. They actually provide the evidence, and that's the key. It's not the argument that's the issue under Singleton. It's the evidence. The appellants had the opportunity, took the opportunity at those sites that I just referenced to provide the district court judge with the evidence on this specific issue. The appellants raised the issue on appeal. And then in reply, the defendants also at ER 562 through 563 and 405 through 422, both in their reply brief and in their supplemental brief, addressed this issue head on. And so I think the issue was clearly before the judge in terms of the timing. The evidence, the specific evidence I was just referring to with regard to the mother's testimony, that was cited by and provided to the district court by appellants themselves. So for appellants to now stand up and say, hey, we didn't get a chance to address this issue, provide evidence to the court on this issue, I think lacks any semblance of truth because they're the ones who actually brought the issue in the first place. The question was, was it raised to the district judge, not whether it was raised in the record. Yes. It would be your issue to raise. Oh, absolutely, Your Honor. And it was raised. That's what I'm saying. It was raised to the district court judge by the appellants in their opposition. You have to raise it. They can't raise your issues. I think Singleton actually says that it's not the issue that needs to be raised to the district court judge. It's the evidence itself. And I guess I would submit to Your Honors, how could the defendants raise the issue if, in looking at the Third Amendment complaint, the issue is not there? There's no claim under 340.1. There's no claim for childhood sexual abuse. They're run-of-the-mill State claims. And so the evidence, because the appellants actually had the benefit of knowing it was an issue, they raised it in the opposition. And that evidence that they cited went right before the district court judge. The district court judge actually took supplemental briefing on that issue. It was clearly an issue that the judge considered and that appellants had ample opportunity to brief. They did it in their opposition. They did it in a supplemental brief on that issue. Thank you, counsel. Thank you, Your Honors. Rebuttal. Very briefly, going backwards, the defendants misread the Singleton case. The argument was not raised below. The issue is not whether or not who's going to be liable for these claims of sexual abuse. The issue is whether or not the case is exempt from the claim filing requirement. And whoever is responsible from the district for the sexual abuse doesn't matter on the question of who the claim filing requirement is exempt for the reasons that we briefed. The issue of whether or not there is, it's necessary to show that the abuse was the result or caused of or because of disability doesn't matter if we're talking about a denial of access to education. And the disputes they raise about the expert declarations obviously go to the weight and aren't relevant to determining summary judgment. And finally, the defendants have not denied that Ms. Holder was deliberately indifferent, both in the manner, in her abusive conduct and in her failure to provide meaningful access to education. Counsel, do you take issue with opposing counsel's position that the state claim was not timely? The position we take is that the, yeah, we take the position that the claim was exempt from the requirement that a tort claim be filed. Right. But in order to be exempt, it had to have occurred after the 2009, and we do contest that. So what evidence are you relying upon in the record to refute the evidence relayed by opposing counsel of the father's representation that these events occurred before Christmas 2008? The, it's covered in our reply brief. Well, just tell me. But basically the testimony was that the aides told them that this was occurring on a regular basis and throughout the time that he was in the classroom, he was in the classroom until April 2009. So the inference would be that it continued up until April 2009. And once again, this was an argument that was not raised below by the defendants. Well, but it's an issue of law, that the timeliness is an issue of law, that we can decide. Well, I refer to the Singleton case, but I do believe that the evidence that's cited in the reply brief on that issue shows that there is evidence that gives reasonable inference that the conduct continued after the effective date of this statute. All right. Thank you, counsel. Thank you to all counsel. The case just argued is submitted for decision by the Court. The final case on calendar for argument today is Nury v. Bank of America.
judges: Wallace, Rawlinson, Watford